702 So.2d 562 (1997)
Mohamed MEZROUB, Appellant,
v.
Javier F. CAPELLA, Appellee.
No. 96-04549.
District Court of Appeal of Florida, Second District.
November 19, 1997.
*563 M. Joseph Lieb, Jr., and F. Scott Westheimer of Syprett, Meshad, Resnick & Lieb, Sarasota, for Appellant.
Richard A. Garland of Dickinson & Gibbons, P.A., Sarasota, for Appellee.
ALTENBERND, Judge.
Mohamed Mezroub appeals the trial court's final order dismissing his personal injury lawsuit on the ground that it is barred by the statute of limitations. The trial court reluctantly dismissed the action because it concluded that section 95.10, Florida Statutes (1993), required a Florida court to borrow a Georgia statute of limitations for use in a lawsuit involving an automobile accident occurring in Georgia. Al though our borrowing statute does contain language dating from the period when we rigidly applied lex loci delicti as the method to resolve conflicts of law in tort cases, a trial court must now apply a significant relationship analysis when deciding whether to borrow a foreign statute of limitations. See Bates v. Cook, Inc., 509 So.2d 1112 (Fla.1987). Under that analysis, *564 the trial court erred when it used the Georgia statute of limitations in this case.
Mr. Mezroub and the defendant, Javier F. Capella, have been residents of Sarasota County, Florida, at all times relevant to this lawsuit. The parties decided to drive Mr. Capella's car to Georgia to attend a convention of Muslim scholars because they have a common interest in the Muslim religion. While en route to the convention, on November 27, 1993, Mr. Capella was driving his car when it was involved in an automobile accident on Interstate 75 near Atlanta. Mr. Mezroub sustained personal injuries for which he received medical treatment, primarily by physicians in Sarasota County.
On January 23, 1996, Mr. Mezroub filed this action against Mr. Capella in Sarasota County. The action was filed within Florida's four-year statute of limitations, but after the expiration of Georgia's two-year limitation period. See Ga.Code Ann. § 9-3-33 (1993). The initial complaint did not allege the parties' contacts with Florida. The trial court allowed Mr. Mezroub to amend his complaint to allege all of the above-described facts, and then dismissed the complaint with prejudice on the basis of section 95.10, which states:
When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action be cause of lapse of time, no action shall be maintained in this state.
Section 95.10 was first enacted in 1872 and was last amended in 1974. See ch. 1869, § 18, Laws of Fla. (1872); ch. 74-382, § 5, Laws of Fla. The statutory phrase, "the cause of action arose," is reminiscent of the more mechanical lex loci delicti rules under which courts resolved issues involving conflicts of law by locating the territory in which the claim "arose" or "accrued." See 86 C.J.S. Torts § 27 (1997). For example, in Beasley v. Fairchild Hiller Corp., 401 F.2d 593 (5th Cir.1968), the court borrowed a Louisiana statute of limitations pursuant to section 95.10 to bar a products liability action. It did so, even though the victim was a Florida resident piloting a helicopter sold to and maintained by a Floridian. The helicopter crashed in Louisiana on a cross-country trip that began in Florida. Under the lex loci delicti analysis, Louisiana was the place where the tort "arose" because it happened to be the place of injury. If the analysis in Beasley were still applicable, we would affirm the trial court's ruling in this case.
The Supreme Court of Florida, in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla.1980), however, rejected the traditional lex loci delicti rule and adopted the significant relationship test for determining conflict-of-laws issues in tort cases. In Bates v. Cook, Inc., 509 So.2d 1112 (Fla. 1987), the supreme court expressly held that the significant relationship test from the Restatement (Second) of Conflict of Laws, which was described in Bishop, should be used to determine where a cause of action arises for purposes of section 95.10:
Our ruling does not do violence to Florida's borrowing statute. We simply hold that the significant relation ships test should be employed to decide in which state the cause of action "arose." The borrowing statute will only come into play if it is determined that the cause of action arose in another state.
509 So.2d at 1115.
Thus, we must apply certain choiceof-law provisions from the Restatement (Second) of Conflict of Laws (1969).[1] Section 146 provides:
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in s[ection] 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Section 145 provides:

*565 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in s[ection] 6.
(2) Contacts to be taken into account in applying the principles of s[ection] 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular is sue.
Section 6 of the Restatement (Second) Conflict of Laws (1969) provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice-of-law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the de termination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Under these guidelines, the choice of applicable law is determined for each particular issue. See Crowell v. Clay Hyder Trucking Lines, Inc., 700 So.2d 120 (Fla. 2d DCA 1997); Department of Corrections v. McGhee, 653 So.2d 1091 (Fla. 1st DCA 1995). The place of injury still determines which state's law applies, unless some other state has a more "significant relationship" to the issue. The significant relationship is assessed by examining the enumerated factual "contacts" in section 145(2), which are to be taken "into account" while applying the general principles of section 6. This is not a simple "center of gravity" or "contacts counting" test.[2] Rather, the court must determine which state or states have a true interest in the application of their law, by examining the various factual contacts in light of the rather malleable principles set forth in section 6. If only one state is interested in the tort is sue, the court should apply the law of that state. If two or more states are interested, then the court must determine which state has a dominant interest and apply the law of that state. If no state has a clearly dominant interest, then the court should apply the law of the place of injury as explained in section 146.[3]
Because Mr. Mezroub's injury occurred in Georgia, we begin our analysis with the assumption that Georgia law will apply unless Florida has a more significant relationship "with respect to a particular issue." The particular issue in this case is statute of limitations.
Next, we look at the contacts under section 145(2) that support the use of either Georgia or Florida law. The place of injury and the place of conduct both support the use of Georgia's law. Florida is the residence of the parties and the place where their relationship centers.[4] This "contacts counting" tie, however, is easily broken when one evaluates the contacts "according to their relative importance with respect to the particular issue." For a statute of limitations issue, when one state is both the residence and *566 place of relationship for all parties, these contacts are far more important than the place of injury.[5]
As the supreme court observed in Celotex Corp. v. Meehan, 523 So.2d 141, 143 (Fla.1988), section 95.10 is intended to prevent forum shopping. The plaintiff in this case is not forum shopping, but simply has selected the home forum of both parties as the most convenient forum. Although a statute of limitations issue can be outcome determinative, it is based on local policies concerning the timeliness of law suits, the freshness of evidence, and the administration of local court dockets. When all of the parties are residents of the same locality and that forum's courts will resolve the dispute, there is little reason to import or "borrow" foreign policies or attitudes about the timeliness of litigation.[6]
Applying the principles in section 6 in light of the above-mentioned con tacts is not a mechanical task. There is no clear statutory choice-of-law directive in section 95.10, as interpreted in Bates, that would invoke section 6(1). The seven principles in section 6(2) may allow for arguments in support of both Georgia and Florida law, but the arguments in favor of Florida predominate.
 Factor a. Given that all parties to this action are Florida citizens, there appear to be few needs of the interstate system to consider.
 Factor b. Florida, as the forum, has a general policy that permits the filing of negligence actions within four years.
 Factor c. Georgia may have an interest in minimizing subpoenas to its citizens and police officers, but it has no citizens with any direct interest in this personal injury action. If Georgia has an interest in the enforcement of its traffic regulations, it can fulfill that interest in its own traffic courts.
 Factor d. The defendant and any Florida insurance company that may insure this vehicle have no justified expectation that negligence suits will be brought in Florida by Floridians more rapidly than required by the state's four-year statute of limitations.
 Factor e. The place of injury from the defendant's perspective is almost fortuitous because the trip involved roughly an equal number of miles in Florida and Georgia. There does not seem to be any "basic policy" underlying this particular field of law that would support the use of Georgia law.
 Factors f and g. The goals of certainty and ease of application are never easily achieved in conflicts of laws, but the analysis in this case suggests that Florida should normally apply its own longer statute of limitations in any auto mobile negligence action between a Florida passenger and a Florida driver. There would be certainty in such a rule.
The factual contacts in this case are quite similar to those in Bishop. Mr. Capella established the duty he owed to Mr. Mezroub in Florida. Not only were their residences in Florida, but their relationship also centered in Florida. This relationship is more than a friendship based on religion. It involves a joint decision under which one man became the driver and the other, a passenger, in a *567 vehicle that began its journey in Florida with plans to eventually return to this state. See also Harris v. Berkowitz, 433 So.2d 613 (Fla. 3rd DCA 1983) (applying Florida's wrongful death act to similar Maine auto mobile accident). Without necessarily approving the result in Jones v. Cook, 587 So.2d 570 (Fla. 1st DCA 1991), we note that this case is distinguishable from Jones be cause the Florida plaintiff in Jones was involved in a two-car accident in Georgia. In that case, the defendant was coincidently another Florida resident visiting Georgia. While their residences were in Florida, the conduct causing the injury occurred in Georgia, and both parties regularly conducted business in Georgia and were in Georgia on their respective business purposes when the accident happened.[7]
In conclusion, a proper application of the rules employed to determine the most significant relationship for the issue of the negligence statute of limitations in this case requires the trial court to apply the Florida statute. The action is not barred by the statute of limitations, and the trial court erred in dismissing Mr. Mezroub's complaint.
Reversed and remanded.
CAMPBELL, A.C.J., and FRANK, J., concur.
NOTES
[1] Our analysis of these provisions has been greatly assisted by a recent law review article. See Michael S. Finch, Choice-of-Law Problems in Florida Courts: A Retrospective on the Restatement (Second), 24 Stetson L.Rev. 653 (1995).
[2] Finch, supra n. 1 at 687.
[3] See id. at 670-71.
[4] The comments to the restatement suggest that the place where the relation ship is centered should be a very important contact in guest passenger cases. Restatement (Second) of Conflict of Laws § 145 cmt. e (1971).
[5] It is possible that this case involves a "false conflict." See id. at 662. That is to say, Georgia may have no relevant connection to the statute of limitations issue. Unfortunately, the record on appeal does not supply us with the details of this accident. If this is a two-car accident involving a Georgia resident, then Georgia would have an arguable interest. See also Adams v. Brannan, 500 So.2d 236 (Fla. 3d DCA 1986) (finding false conflict between Florida and North Carolina law).
[6] Section 142 of Restatement (Second) of Conflict of Laws (Supp.1988) also supports using the forum's statute of limitations. Specifically, section 142 states:

Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in s 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
(1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest of the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.
[7] Similarly, this case is distinguishable from Robinson v. Merkle, 700 So.2d 723 (Fla. 2d DCA 1997), in which this court held that West Virginia's statute of limitations should be applied to a case where the injury occurred in West Virginia. In Robinson, Florida did not have a more significant relationship than West Virginia. West Virginia had many contacts relevant to the issue and an interest in its state's regulation of the doctor/patient relationship.